IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATIE F. LAPP, | : No. 1:23-CV-0419 |
|     Plaintiff | : |
| | : (Judge Munley) |
| v. | : |
| | : |
| GEORGE NYE, *et al.*, | : |
|     Defendants | : |

## MEMORANDUM

Plaintiff Katie F. Lapp initiated the above-captioned *pro se* action under 42 U.S.C. § 1983[1] while imprisoned at Columbia County Prison, in Bloomsburg, Pennsylvania. It appears that Lapp is no longer incarcerated. (See Doc. 20). She alleges that, while incarcerated, six prison officials violated her constitutional and statutory rights with respect to her religion. Defendants move to dismiss her complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court will grant in part and deny in part Defendants' motion to dismiss.

## I. BACKGROUND

Lapp's lawsuit primarily involves events that she alleges occurred on the day she was transferred to Columbia County Prison from Clinton County

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

Correctional Facility. Lapp recounts that, on February 8, 2023, she arrived at Columbia County Prison around 10:45 a.m. (Doc. 1 ¶ 12). During the intake process, a female corrections officer asked Lapp to remove her religious head covering so that she could pat down Lapp's hair to make sure it was free of contraband. (Id.) Lapp, who professes to be a devout Christian and maintains that her religion requires her head to be covered to avoid indecent "nakedness" (presumably in front of males), (see id. ¶¶ 16, 18-20, 22), agreed to remove her head covering in private for the female officer, (id. ¶ 12). The female officer strip searched Lapp, during which Lapp willingly removed her head covering and shook out her hair to confirm that no contraband was hidden in her hair or under her covering. (Id. ¶ 13). After the strip search, Lapp dressed in the required prison uniform and replaced her head covering. (Id. ¶ 14).

Lapp was then informed by two unidentified corrections officers in the intake area that, to take her prison photograph, she must remove her head covering. (Id.) Lapp avers that she was "devastated" by this information, telling the officers that it was her religious right to keep her head covering on even when taking official identification photographs (e.g., for a passport). (Id. ¶ 15).

Around this point, Lapp recalls that defendants Lieutenant McCabe, Sergeant Horrax, and Corrections Officer Whitmire arrived at the intake area. (Id. ¶ 16). Lapp asserts that McCabe, Horrax, and Whitmire insisted that she

remove her head covering for the intake photos, despite her protestations that it would violate her religious rights. (Id.) Lapp alleges that she informed the officers that taking off her head covering "would be like uncovering her legs and thighs" in their presence, and steadfastly maintained that she had a right to keep her covering on for the prison photographs. (Id. ¶¶ 17-18).

According to Lapp, McCabe then demanded that she remove her head covering. (Id. ¶ 20). Lapp continued to refuse, so McCabe physically removed the covering and had the photos taken without it. (Id.) After Lapp's photos were taken, McCabe returned her head covering and Whitmire allegedly handcuffed her and "put her in Admin Lock[up] for an unspecified amount of time." (Id. ¶ 21).

Lapp appears to have initiated the grievance process that same day. She claims that she filed a formal grievance to defendant Deputy Warden Tim Burns several hours after the incident. (Id. ¶ 22). Lapp asserts that, in her grievance, she requested that the pictures of her with her head uncovered be deleted and new pictures be taken. (Id.)

Later that afternoon, Lapp was issued a misconduct by McCabe for refusing to obey orders, *i.e.*, refusing to remove her head covering for the intake photographs. (Id. ¶ 23). During her misconduct hearing on February 13, Lapp alleges that defendant Discipline Hearing Officer John Weber informed her that "safety trumps her religious rights" and, due to the risk of contraband (like a

"knife") being hidden under her head covering, removal was required and her refusal to do so warranted the misconduct. (Id. ¶¶ 24-25). Lapp was found guilty of the charged offense and "sent back to her cell for seven days of disciplinary locks." (Id. ¶ 25).

Lapp immediately appealed the misconduct hearing results to defendant Warden George Nye. (Id. ¶ 26). She claims that, in addition to appealing the hearing officer's decision, she asked Nye to remove "all traces" of the "indecent photos" of her from the system. (Id.) The next day, February 14, Nye denied the misconduct appeal. (Id.)

Burns also denied Lapp's grievance on February 14. (Id. ¶ 27). According to Lapp, Burns explained to her in the grievance response that "an intake photo is taken of all inmates without any head or face covering for security and identification purposes," and denied her request to delete the photos. (Id.) Lapp immediately appealed the denial to Nye, who affirmed the grievance denial. (Id. ¶ 28).

Lapp filed the instant lawsuit in March 2023. (See generally Doc. 1). She maintains that Defendants' actions violated her First, Fifth, and Eighth Amendment rights, as well as the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc. (Id. ¶¶ 29-33). She seeks declaratory relief, permanent injunctive relief, nominal damages, and punitive

4

damages.[2] (Id. ¶¶ 35-37). Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 16). That motion is fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996). The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. See Phillips v. County of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

---

[2] Although Defendants assert that Lapp requested compensatory damages, (see Doc. 17 at 8-9), no such request appears in Lapp's complaint.

5

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. See Connelly v. Lane Const. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations, quotation marks, and footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

Because Lapp proceeds *pro se*, her pleadings are to be liberally construed and her complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted). This is particularly true when the *pro se* litigant, like Lapp, was incarcerated at the time she lodged her civil rights complaint. See Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020) (citation omitted).

6

## III. DISCUSSION

Before addressing the sufficiency of Lapp's complaint, the Court must identify the claimed constitutional violations. See Albright v. Oliver, 510 U.S. 266, 271 (1994) ("The first step in any [Section 1983] claim is to identify the specific constitutional right allegedly infringed."); Graham v. Connor, 490 U.S. 386, 394 (1989) (explaining that analysis of a Section 1983 claim requires "identifying the specific constitutional right allegedly infringed by the challenged" conduct).

Lapp is clearly raising a claim under the Free Exercise Clause of the First Amendment and alleging a violation of RLUIPA. She does not specify what type of Eighth Amendment claim she is asserting against Whitmire in paragraph 30 of her complaint. Defendants interpret Lapp's pleading as alleging an Eighth Amendment excessive force claim, (see Doc. 17 at 4-5), and Lapp agrees with that interpretation, (see Doc. 18 at 2-3). Lapp also seems to be asserting an Eighth Amendment conditions-of-confinement claim against Weber in paragraph 31 of her complaint. (See Doc. 1 ¶ 31). Finally, Lapp appears to be raising a procedural due process claim under the Fifth Amendment with respect to her disciplinary hearing and sanction. (See id.). However, because her due process allegations target state rather than federal officials, only the Due Process Clause

7

of the Fourteenth Amendment applies. See B & G Constr. Co. v. Dir., Office of Workers' Comp. Programs, 662 F.3d 233, 246 n.14 (3d Cir. 2011).

Lapp's complaint is deficient in multiple respects. The court will address these deficiencies in turn.

### A. Claims Against Burns

It is well established that in Section 1983 actions, liability cannot be "predicated solely on the operation of *respondeat superior*." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted); see also Ashcroft v. Iqbal, 556. U.S. 662, 676 (2009) (affirming same principle in Bivens context). Rather, in a Section 1983 action, the plaintiff must plausibly plead facts that demonstrate the defendant's "personal involvement in the alleged misconduct." Dooley v. Wetzel, 957 F.3d 366, 374 (3d Cir. 2020). Personal involvement can include direct wrongful conduct by a defendant, but it can also be demonstrated through evidence of "personal direction" or "actual knowledge and acquiescence"; however, such averments must be made with particularity. Id. (quoting Rode, 845 F.2d at 1207).

Furthermore, it is equally settled that involvement in the post-incident grievance process alone does not give rise to Section 1983 liability. See id. (affirming dismissal of claims against prison officials for lack of personal involvement when officials' "only involvement" was "their review and denial of

8

[plaintiff]'s grievance"); Lewis v. Wetzel, 153 F. Supp. 3d 678, 696-97 (M.D. Pa. 2015) (collecting cases); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (nonprecedential); Alexander v. Gennarini, 144 F. App'x 924, 925 (3d Cir. 2005) (nonprecedential) (explaining that prisoner's claims against certain defendants were "properly dismissed" because the allegations against them "merely assert their involvement in the post-incident grievance process").

Defendants are correct that Lapp fails to allege personal involvement with respect to Deputy Warden Burns. As is clear from the face of the complaint, Burns was involved only with the post-incident grievance process, wherein he denied Lapp's grievance. There is no plausible allegation that he participated in the purported constitutional or RLUIPA violations. Accordingly, the court must dismiss any claims against Burns for lack of personal involvement.

## B.   Claims Against Weber

Lapp asserts a First, Eighth, and Fourteenth Amendment claim against John Weber, the discipline hearing officer. (See Doc. 1 ¶ 31). None of these claims survives Rule 12(b)(6) scrutiny.

To plausibly state a Section 1983 claim for infringement of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide

9

'due process of law.'" Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)). If a plaintiff cannot identify a protected interest that is "at stake," the analysis is at an end. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

To the extent that Lapp is attempting to assert a procedural due process claim against Weber concerning the disciplinary hearing and resultant sanction, she has not done so. Lapp has not identified a protected liberty or property interest with respect to being put on "disciplinary lock" for seven days. The court observes that "disciplinary lock" appears to be similar to administrative or disciplinary segregation,[3] which the Supreme Court of the United States has found generally does not reflect an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" such that it implicates a protected liberty interest under the Fourteenth Amendment. Sandin v. Conner, 515 U.S. 472, 484, 486 (1995). The Third Circuit, moreover, has repeatedly held that disciplinary segregation for periods much longer than that of which Lapp complains does not rise to the level of an atypical and significant hardship. See Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002) (seven months); Torres v. Fauver, 292 F.3d 141, 151 (3d Cir. 2002) (135 days); Griffin v. Vaughn, 112 F.3d

---

[3] Lapp describes it as being put in "the hole," (see Doc. 18 at 4), which is often slang for solitary confinement or disciplinary segregation.

10

703, 705-07 (3d Cir. 1997) (fifteen months); Dunbar v. Barone, 487 F. App'x 721, 725 (3d. Cir. 2012) (540 days). Because Lapp has not identified a protected liberty interest that is at stake, she has failed to state a Fourteenth Amendment procedural due process claim.

Additionally, any First Amendment claim targeting Weber fails for lack of personal involvement. Weber took no part in the February 8 incident, nor did he play any role in promulgating or applying the policy regarding inmates' intake photos. He simply acted as the hearing officer for Lapp's misconduct. Thus, he had no personal involvement in any alleged First Amendment violation. See Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) (finding that defendant had no "personal involvement in the application to plaintiffs of the challenged policies," and thus any damage claims against defendant "were properly dismissed").

Finally, if Lapp is attempting to assert an Eighth Amendment conditions-of-confinement claim against Weber for sanctioning her to seven days of "disciplinary lock" for the misconduct, (see Doc. 1 ¶ 31), such a claim is a nonstarter. This short period of disciplinary segregation does not implicate a sufficiently serious deprivation of life's necessities. See Griffin v. Vaughn, 112 F.3d 703, 705, 709 (3d Cir. 1997) (finding no Eighth Amendment violation for inmate's placement in administrative segregation for 15 months during pendency

11

of disciplinary proceedings); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992) ("Segregated detention is not cruel and unusual punishment *per se*, as long as the conditions of confinement are not foul, inhuman[,] or totally without penological justification."), superseded by statute on other grounds as stated in Nyhuis v. Reno, 204 F.3d 65, 71 n.7 (3d Cir. 2000); Johnson v. Burris, 339 F. App'x 129, 131 (3d Cir. 2009) (nonprecedential) (holding that administrative segregation and loss of minor privileges did not state a conditions-of-confinement claim); Wilson v. Hogsten, 269 F. App'x 193, 195 (3d Cir. 2008) (nonprecedential) (finding that 12-month placement in the SHU—without alleging facts showing a sufficiently serious deprivation of "life's necessities"—was insufficient to state an Eighth Amendment claim). The Eighth Amendment conditions-of-confinement claim against Weber, therefore, must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

### C. Eighth Amendment Excessive Force Against Whitmire

In a Section 1983 claim for excessive force, the "pivotal inquiry" is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Ricks v. Shover, 891 F.3d 468, 480 (3d Cir. 2018) (quoting Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002)). The factors analyzed when making this inquiry include: "(1) the need for the

application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." Id. (quoting Smith, 293 F.3d at 649).  The Eighth Amendment, however, "does not protect an inmate against an objectively *de minimis* use of force." Smith, 293 F.3d at 649 (citation omitted).

Lapp argues that Corrections Officer Whitmire handcuffed her unnecessarily because she was compliant and was not resisting.  However, simply placing an inmate in handcuffs during movement within a prison, without more, is objectively *de minimis* force and does not implicate a constitutional violation. See, e.g., Reyes v. Chinnici, 54 F. App'x 44, 47-49 (3d Cir. 2002) (nonprecedential) (finding that a single punch to a handcuffed prisoner was *de minimis* force); Jamison v. Varano, No. 1:12-CV-1500, 2015 WL 4662696, at *7 n.3 (M.D. Pa. Aug. 6, 2015) (finding *de minimis* force where inmate was pushed into a wall and restrained in handcuffs, with no discernable injury); Acosta v. McGrady, No. 96-CV-2874, 1999 WL 158471, at *8-9 (E.D. Pa. Mar. 22, 1999) (sharply pulling inmate's handcuffed hands behind his back and pushing him into a wall was *de minimis*); Gutridge v. Chesney, No. 97-CV-3441, 1998 WL 248913, at *3 (E.D. Pa. May 8, 1998) (finding *de minimis* force where inmate was

13

handcuffed and pushed against a wall, suffering a small scratch on his cheek as a result). Lapp's excessive force claim against Whitmire, which alleges handcuffing only, must be dismissed because the force applied was objectively *de minimis*.

### D.  First Amendment Free Exercise Claims

The primary focus of Lapp's complaint is the alleged infringement of her religious rights. Lapp contends that Defendants' conduct violated her First Amendment free exercise rights and RLUIPA. The court will examine these claims in turn.

"Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) (citations omitted). "Nevertheless, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). Only beliefs which are (1) sincerely held, and (2) religious in nature are entitled to constitutional protection. See Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); DeHart, 227 F.3d at 51. Once a prisoner-plaintiff has established that they have a sincerely held religious belief, they must demonstrate that the challenged prison practice or policy (which allegedly

14

infringes on that religious belief) in not reasonably related to penological interests under the factors set forth in Turner v. Safley, 482 U.S. 78 (1987). See DeHart, 227 F.3d at 51. The Turner v. Safley analysis aims to balance the constitutional rights of prisoners with the "security, rehabilitation, and administrative concerns" of prisons. See id.

Defendants do not contend that Lapp's beliefs are not religious in nature or sincerely held. In fact, they do not appear to challenge the substance of Lapp's free exercise claim at all. Instead, Defendants take issue with certain prison officials' personal involvement (or lack thereof) with the alleged constitutional violation.

Lapp asserts First Amendment claims against Lieutenant McCabe, Sergeant Horrax, Discipline Hearing Officer Weber, Deputy Warden Burns, and Warden Nye. (See Doc. 1 ¶¶ 29, 31-32). The Court has already addressed (and dismissed) the claims against Burns and Weber above. Upon careful review, the court finds that Lapp's allegations against McCabe and Nye are sufficient to establish personal involvement with respect to the free exercise claim.

Lapp alleges that McCabe demanded that she remove her head covering for the intake photo and then, when Lapp continually refused, McCabe physically removed the covering and took the photo. She further avers that McCabe issued her a misconduct for failing to obey his orders.

Lapp also plausibly pleads personal involvement for Nye. She contends that she formally petitioned Nye—the warden of the prison—to remove the "indecent" photos of her from the system and take new photos, and that Nye refused. Nye, as warden, can plausibly be considered a policymaker at Columbia County Prison with respect to the challenged practice or policy of forcing inmates to remove their head coverings for intake photos.

Lapp's claims against Horrax, on the other hand, fall short. She alleges that Horrax "mockingly" asked her "undignified" questions about the sincerity of her religious beliefs and "sneered" at her responses. (Doc. 1 ¶¶ 19, 29). These allegations do not rise to the level of a constitutional violation. It is well settled that conduct like verbal harassment, taunting, and use of profanity, without any injury or threat thereof, is insufficient to implicate a constitutional infringement. See Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) (explaining that "verbal harassment does not give rise to a constitutional violation enforceable under § 1983"); see also Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) (collecting cases); Manning v. Flock, No. 1:11-cv-0293, 2012 WL 1078227, at *12 (M.D. Pa. Mar. 30, 2012) (collecting cases); Graham v. Main, No. 10-cv-5027(SRC), 2011 WL 2412998, at *24-25 (D.N.J. June 9, 2011) ("Allegations of verbal abuse or threats, unaccompanied by injury or damage, are not cognizable under § 1983, regardless of whether the inmate is a pretrial

detainee or sentenced prisoner.") (collecting cases); Mohamed v. Aviles, No. 06-cv-4794 (FSH), 2007 WL 923506, at *5 (D.N.J. Mar. 26, 2007) (collecting cases).

In sum, Lapp's First Amendment free exercise claim may proceed against McCabe and Nye. No other Defendants are alleged to have had the requisite personal involvement with respect to Lapp's exercise of religious beliefs.

### E. RLUIPA Claims

Section 3 of RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling interest," and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1), (2). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." Id. § 2000cc-5(7)(A); see also Cutter v. Wilkinson, 544 U.S. 709, 715 (2005).

To state a claim under RLUIPA, a plaintiff must allege that the prison placed a "substantial burden" on the plaintiff's sincerely held religious belief. See Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007). "[A] substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to

17

other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs." Id. at 280.  If a prisoner-plaintiff establishes a substantial burden on a sincerely held religious belief, the burden shifts to the defendant to show that the policy or practice furthers a compelling government interest and is the least restrictive means of doing so.  See Holt v. Hobbs, 574 U.S. 352, 361-62 (2015) (quoting 42 U.S.C. § 2000cc-1(a)).

The court need not expend significant time on Lapp's RLUIPA claim. Defendants do not challenge that she has stated such a claim (at least as to McCabe), and the same personal involvement analysis applied to Lapp's free exercise claim can be applied to her RLUIPA claim.  Moreover, because RLUIPA provides greater protections for religious exercise than the First Amendment, see Holt, 574 U.S. at 361, a plaintiff who has plausibly stated a First Amendment free exercise claim likely has plausibly alleged a RLUIPA claim as well.  See Adams v. Corr. Emerg. Response Team, 857 F. App'x 57, 60 (3d Cir. 2021) (nonprecedential) (noting the converse, i.e., that because RLUIPA provides greater protections for a prisoner's religious exercise, "a claim that cannot satisfy RLUIPA's threshold merits inquiry necessarily fails as to the First Amendment").

Nevertheless, Defendants are correct that any individual capacity RLUIPA claims against them must be dismissed. It is well settled that RLUIPA "does not permit" actions against government officials "in their individual capacities." Sharp v. Johnson, 669 F.3d 144, 153, 154 (3d Cir. 2012). Thus, only Lapp's official capacity RLUIPA claims against McCabe and Nye can proceed.

### F. Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002). Leave to amend Lapp's procedural due process and Eighth Amendment claims will be denied as futile. These claims are legally, rather than factually, deficient. Based on the allegations of Lapp's complaint, it is clear that she cannot state a Fourteenth Amendment procedural due process claim. Lapp's punishment of seven days in "disciplinary lock" does not, and cannot, implicate a protected liberty interest such that she could plausibly allege a procedural due process violation. Additionally, Lapp's excessive force and conditions-of-confinement allegations do not, and cannot, give rise to an Eighth Amendment infringement.

This case, therefore, will proceed on the following Section 1983 causes of action: (1) First Amendment free exercise claims against defendants McCabe

19

and Nye; and (2) official capacity RLUIPA claims against McCabe and Nye. The other named Defendants will be dismissed from this action.

## IV. CONCLUSION

Based on the foregoing, the Court will dismiss in part Lapp's complaint pursuant to Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. An appropriate Order follows.

Date: 1/4/24

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court